# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 05-CV-0007 (JFB) (MDG)

HEATHER STOKES,

Plaintiff,

VERSUS

CITY OF NEW YORK, DETECTIVE BUSKEY, SHIELD # 238, KWAYERA ARCHER-CUNNINGHAM,

Defendants.

MEMORANDUM AND ORDER
May 3, 2007

JOSEPH F. BIANCO, District Judge:

Plaintiff Heather Stokes ("Stokes") brings this action, alleging claims for violations of her civil rights under 42 U.S.C. § 1983, as well as pendent state claims, arising from her arrest on March 4, 2004, at her residence in Brooklyn, New York, for Criminal Impersonation in the Second Degree and Forgery in the Third Degree. Stokes contends that defendant Detective Mark Buskey ("Buskey") entered her residence without a warrant, arrested her without probable cause, and utilized excessive force during the arrest. As a result, Stokes asserts claims for unreasonable search and seizure, false arrest, excessive force, and false imprisonment in connection with her arrest and subsequent detention.

Defendants City of New York and Buskey (collectively, "the defendants") move for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, defendants' motion for summary judgment is (1) denied as to the unreasonable search and seizure claim because a disputed issue of material fact exists as to whether Buskey had consent to enter the residence; (2) granted as to the false arrest and false imprisonment claims based upon the existence of probable cause as a matter of law; (3) granted as to the excessive force claim because no force was used during the arrest other than a routine handcuffing and pat-down and, thus, there is no cognizable constitutional injury; (4) granted as to the municipal liability claim; and (5) granted as to the pendent state claims.

I. BACKGROUND

A. The Facts

The facts described below are taken from the parties' depositions, declarations, affidavits, exhibits and respective Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

Buskey was employed as a Detective for the New York City Police Department during the time period of the incident alleged in the complaint. (Defs.' 56.1 Stmt. ¶ 1.) (hereinafter "Defs.' 56.1")[1] Sister Kwayera Archer-Cunningham ("Archer-Cunningham") is the founder and director of the Ifetayo Cultural Arts Facility ("Ifetayo"), a non-profit organization. (*Id.* ¶ 2.) Stokes was employed by Ifetayo from approximately October 2003 through February 5, 2004, when she was terminated. (*Id.* ¶ 3; Ex. D, at ¶¶ 4-5.)

On February 13, 2004, Archer-Cunningham called the 70th Precinct of the NYPD to report that a check in the amount of approximately $431 (hereinafter, "the Check") from Ifetayo had been cashed by Stokes without an authorized signature. (Ex. D, at ¶ 4.) According to Archer-Cunningham, she was the only person authorized to sign checks on behalf of Ifetayo on the account on which the Check was drawn, and she did not sign the Check that was cashed by Stokes. (*Id.* ¶¶ 5-6.)

On or about February 15, 2004, Buskey was assigned to handle the complaint made by Archer-Cunningham. (Defs.' 56.1 ¶ 7.) On February 17, 2004, Buskey called Archer-Cunningham and left her a message. (*Id.* ¶ 8.) On February 20, 2004, Archer-Cunningham spoke with Buskey about the Check, and told him that Stokes had cashed the Check issued by Ifetayo and that Archer-Cunningham did not sign the front of the check as the payor, even though the check purportedly contained her signature. (Ex. D., at ¶¶ 7-8.) Archer-Cunningham also provided Buskey with a copy of the Check. (Defs.' 56.1 ¶ 11.) Upon receiving a copy of the Check, Buskey brought it to the location where the Check had been cashed. (*Id.* ¶ 12.) The check-cashing establishment provided Buskey with a copy of the photo identification card used by the person who had cashed the check. (*Id.* ¶ 13.) The name on the photo identification card was Heather Stokes, which matched the name provided by Archer-Cunningham. (*Id.* ¶ 14; Ex. C, at 44-45.) According to Buskey, he then contacted the New York City Police Department Legal Bureau and the District Attorney's Office, informed them of the information he had obtained, and was told he had probable cause to arrest Stokes. (Ex. C, at 59, 64-65; Ex. J.)

In mid-February 2004, Buskey called Stokes, told her that there was an open complaint against her, and asked her to come to the precinct. (Defs.' 56.1 ¶¶ 17-18.) Stokes told Buskey that she was not going to take care of any business over the phone and hung up. (Defs.' 56.1 ¶ 19.)

According to Stokes, on March 4, 2004, she was in her home in Brooklyn, New York, when Buskey entered the residence without a warrant to arrest her. (Compl. ¶¶ 12-13.) Stokes testified that the following events took

---

[1] References to Defs.' 56.1 Statement are undisputed unless otherwise indicated.

2

place once Buskey was in the residence: Buskey called for back-up during the arrest and, as a result, over one dozen police officers arrived at Stokes' home. (Ex. 1, at 150.) According to plaintiff, Buskey's partner was shocked when he called for back-up and asked Buskey what he was doing. (*Id.*, at 49-50.) Stokes did not resist arrest, was placed in handcuffs, and was physically searched by Buskey. (Defs.' 56.1 ¶ 22; Ex. 1, at 149, 152-53.) Stokes is not claiming any physical injuries as a result of the arrest, but rather is claiming that the arrest resulted in emotional trauma. (Ex. 1, at 183.)

B. Procedural History

On January 3, 2005, Stokes filed the instant action against the City of New York, Buskey, and Archer-Cunningham.[2] This case was reassigned to the undersigned on February 10, 2006. On January 5, 2007, defendants moved for summary judgment on all claims. Oral argument was held on February 16, 2007.

---

[2] According to the docket, Archer-Cunningham has never been served in this lawsuit. Accordingly, because Stokes has not served Archer-Cunningham or shown good cause for her failure to do so, Stokes' claims against Archer-Cunningham are dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(m); *see, e.g., Rosenbaum v. Johar*, No. 05-CV-24748 (RNC), 2007 U.S. Dist. LEXIS 24748, at *9 (D. Conn. Mar. 25, 2007); *Lykes Lines Ltd. LLC v. Bringer Corp.*, No. 04-CV-4460 (RMB), 2007 U.S. Dist LEXIS 19785, at *11-*12 (S.D.N.Y. Mar. 12, 2007); *Astarita v. Urgo Butts & Co.*, No 96 Civ. 6991 (PKL), 1997 U.S. Dist. LEXIS 8112, 1997 WL 317028, at *5 (S.D.N.Y. Jun. 10, 1997).

II. STANDARD OF REVIEW

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be

3

granted." 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

### III. DISCUSSION

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. For claims under section 1983, a plaintiff must prove "that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir.1999) (citation omitted).

Defendants move for summary judgment on all claims. Specifically, defendants assert the following bases for their motion: (1) Buskey had probable cause to arrest Stokes and, in any event, is entitled to qualified immunity; (2) Stokes did not provide any evidence with which to prove excessive force; (3) Stokes cannot identify any unlawful policies or practices of the City that could have led to her arrest; and (4) Stokes cannot prove any cognizable state claims. The Court will examine each of Stokes' claims in turn – the unreasonable search and seizure claim, the false arrest/false imprisonment claim, the excessive force claim, the *Monell* claim, and the pendent state law claims.

### A. Unreasonable Search and Seizure

Stokes asserts a claim for unreasonable search and seizure under the Fourth Amendment based upon Buskey's entry into Stokes' residence without a warrant for her arrest. As set forth below, there is a disputed issue of material fact regarding whether consent was given to enter the residence that cannot be resolved on summary judgment.

The Fourth Amendment protects individuals in their homes "against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *United States v. Elliot*, 50 F.3d 180, 185 (2d Cir. 1995) (quoting *Schneckloth*

4

*v. Bustamonte*, 412 U.S. 218, 219 (1973)). "To the Fourth Amendment rule ordinarily prohibiting the warrantless entry of a person's house as unreasonable *per se*, one jealously and carefully drawn exception recognizes the validity of searches with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 126 S. Ct. 1515, 1520 (2006) (quotations and citations omitted); *accord United States v. Matlock*, 415 U.S. 164 (1974); *Koch v. Town of Brattleboro, Vt.,* 287 F.3d 162, 167 (2d Cir. 2002) ("A search conducted pursuant to consent by an authorized third party does not require probable cause or a warrant.") (citing *Matlock*, 415 U.S. at 171 n.7). Depending on the circumstances, "[t]hat person might be the householder against whom evidence is sought, or a fellow occupant who shares common authority over property, when the suspect is absent." *Randolph*, 126 S. Ct. at 1520 (citing *Schneckloth*, 412 U.S. at 222 and *Matlock*, 415 U.S. at 170). More specifically, "[t]he law in this circuit is well settled that a third party's consent will validate a search of places or items in which another maintains a privacy interest if two conditions are satisfied: the third party had (1) 'access to the area searched,' and (2) either '(a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access [to the area].'" *United States v. Snype*, 441 F.3d 119, 136 (2d Cir. 2006) (quoting *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 53 (2d Cir. 2003)).

Although the defendants move for summary judgment on all claims, the defendants provide no explanation as to how this claim can be resolved by way of summary judgment. In fact, defendants acknowledge that "[t]o the extent that the Court construes plaintiff's complaint as alleging a claim for an arrest in plaintiff's home without a warrant, defendants concede there is likely an issue of fact." (Defs.' Mem. at 7 n.1.) As a threshold matter, because the complaint asserts, among other things, that defendants violated Stokes' right "to be from unreasonable search & seizure [and] from warrantless search & seizure," the Court construes the complaint as raising such a claim.

Moreover, with respect to the unreasonable search and seizure claim, the Court finds that there is clearly an issue of fact that precludes summary judgment. In particular, although it is undisputed the Buskey entered the residence without a warrant, defendants contend that Stokes' husband was present at the residence at the time of arrest and gave Buskey permission to enter the home. (*Id.*) However, in his deposition, Stokes' husband testified that he did not observe the officers enter his house and did not give consent for them to enter. (Ex. L, at 27.) Moreover, Stokes testified that she did not give Buskey permission to enter. (Ex. C, at 76.) Therefore, there is a disputed issue of material fact on the core issue with respect to this claim – namely, whether Buskey had consent to enter the residence to execute the arrest.[3] Accordingly, summary judgment on this claim is denied.[4]

---

[3] It does not appear that Buskey is moving for summary judgment on this claim on the grounds of qualified immunity. In any event, to the extent he is, the Court concludes that qualified immunity at this stage would be unwarranted because of the disputed issue of fact on consent. In other words, if Stokes' contention is correct and Buskey entered the residence without a warrant and without consent, his actions would not be protected by qualified immunity under the facts of this case.

[4] In their Reply Brief, defendants argue that, even if the entry was illegal, plaintiff is only entitled to

5

B. False Arrest and False Imprisonment

Defendants assert that Stokes' claims for false arrest and false imprisonment must be dismissed as a matter of law because probable cause existed for Stokes' arrest and that, in any event, Buskey is immune from suit based upon qualified immunity. As set forth below, the Court agrees.

1. Probable Cause

In New York, the claim colloquially known as "false arrest" is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the section 1983 context. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 37 N.Y.2d 451, 456 (N.Y. 1975) (internal citations omitted). Only the last element is in dispute in the instant case—defendant argues that the arrest was privileged as a matter of law because it was supported by probable cause. The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Fulton v. Robinson*, 289 F.3d 188, 195 (2d. Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* Furthermore, "[t]he validity of an arrest does not depend on an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). "Rather, the court looks only to the information the arresting officer had at the time of the arrest." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Finally, under the collective knowledge doctrine, defendant Buskey is permitted to rely on knowledge obtained by any other officers during the investigation. *See Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) ("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'") (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)).

Defendants argue that probable cause to arrest existed based on the fact that Archer-Cunningham had called the police complaining that the Check had been illegally cashed. "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent

---

nominal damages of $1. The Court will not address this issue at the summary judgment stage, but rather will allow parties to brief legal issues regarding damages in connection with the trial on the above-referenced claim.

6

circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119; *see also McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984) ("If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded."). Although Stokes argues that Archer-Cunningham never "filed" a written criminal complaint but rather simply called the police to report the problem concerning the Check, the application of this rule is not limited to the formal filing of a written complaint. Instead, the Second Circuit and other courts have found probable cause to exist where, in the absence of circumstances raising doubts as to the victim's veracity, the police received information directly from a purported victim of a crime without a formal written complaint. For example, in *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001), the Second Circuit found that an arrest of a bar owner for assault was supported by probable cause where police officers based the arrest on information received at the scene. In reaching that decision, the Second Circuit reiterated that "[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *Curley*, 268 F.3d at 70; *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed.") (citing *Singer*, 63 F.3d at 119); *Miloslavsky v. AES Eng'g Soc'y Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("[A] law enforcement official has probable cause to arrest if he received information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth"). Moreover, "the veracity of complainants who are victims of the very crimes they report to police is assumed." *Miloslavsky*, 808 F. Supp. at 355; *accord Lee v. Sandberg*, 136 F.3d 94, 103 n.5 (2d Cir. 1997) (quoting *Miloslavsky* with approval); *see also* 2 Wayne LaFave, *Search and Seizure*, § 3.4(a), at 205 (noting that the Supreme Court has "proceeded as if veracity may be assumed when information comes from the victim of . . . criminal activity").

In the instant case, it is uncontroverted that: (1) on February 20, 2004, putative victim Archer-Cunningham, as the founder and director of Ifetayo, reported to Buskey that one of the organization's checks had been cashed under the name Heather Stokes, a former employee, and that she (Archer-Cunningham) did not sign the check as payor, although the Check purported to contain her signature; (2) after that conversation, Archer-Cunningham provided Buskey with a copy of both the front and back of the Check; and (3) Buskey took the Check to the check-cashing establishment where it had been cashed and obtained a photo-identification card of the person who had cashed the check, which matched the name provided by Archer-Cunningham – namely, plaintiff Heather Stokes.

Under New York law, "[a] person is guilty of Forgery in the Third Degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument." N.Y. Penal Law § 170.05. The Penal Law of the State of New York defines the term "falsely makes" as follows: "A person 'falsely makes' a written instrument when he makes or draws a complete written instrument in its entirety, or an incomplete

7

written instrument, which purports to be an authentic creation of its ostensible maker or drawer but which is not such either because the ostensible maker or drawer is fictitious or because, if real, he did not authorize the making or drawing thereof." N.Y. Penal Law § 170.00. The Penal law defines the term "falsely completes" as follows: "A person 'falsely completes' a written instrument when, by adding, inserting or changing matter, he transforms an incomplete written instrument into a complete one, without authority of anyone entitled to grant it, so that such complete instrument appears or purports to be in all respects an authentic creation of or fully authorized by its ostensible maker or drawer." *Id.*

Therefore, based upon the uncontroverted evidence in the record, the Court concludes that Buskey had probable cause to believe that Stokes was guilty of Forgery in the Third Degree. Specifically, the information from the putative victim, Archer-Cunningham – that her authorized signature had been forged on an organization check issued to Stokes, a former employee, as the payee and cashed by Stokes – provided probable cause to charge Stokes with forgery because there was absolutely no reason for him to doubt Archer-Cunningham's veracity.[5] *See, e.g., Bell v. Murray*, 340 F. Supp. 2d 323, 330 (W.D.N.Y. 2004) (rejecting argument that police had insufficient basis to arrest individual where person to whom check was written was interviewed by police and stated check had been stolen from her); *People v. Swystun*, 509 N.Y.S.2d 220, 220 (N.Y. App. Div. 1986) (finding that "information conveyed to the police officer concerning attempts by defendant to cash a stolen check at a local department store was sufficiently trustworthy to establish probable cause for officer to arrest defendant"); *see also Ex Parte Bryant*, 167 U.S. 104, 107-08 (1897) ("If it were true that three checks were missing from the check books of Morrison & Marshall to which the [appellant] had access, and no corresponding memoranda were made on the stubs; that the three checks were presented to the Commercial Bank; and that the appellant had no authority to sign checks for Morrison & Marshall, – the inference is at least a reasonable one that these checks were forged by the appellant."). Furthermore, probable cause was also buttressed by the additional investigation by Buskey in obtaining a copy of the Check from the victim and verifying

---

[5] The Court recognizes that "the mere attempted negotiation or utterance of a forged instrument cannot, of itself, establish a presumption that defendant had knowledge the instrument was forged." *People v. Miller*, 537 N.Y.S.2d 318, 320 (N.Y. App. Div. 1989) (finding insufficient proof of knowing possession of forged instrument where, among other things, there was no proof as to how defendant could have acquired check and it was stipulated that the forged signature was not in the defendant's handwriting). However, "[g]uilty knowledge of forgery may be shown circumstantially by conduct and events." *People v. Johnson*, 483 N.E.2d 120, 124 (N.Y. 1985); *see also Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) ("While in this case the element of knowledge was essential in finding [the plaintiff] had committed the crime charged, [the officer] was entitled to rely on the implications of the information known to him in assessing whether [the plaintiff] possessed this knowledge."). As noted above, the circumstantial evidence that, among other things, Stokes (1) had access to the checks by virtue of her employment at Ifetayo, and (2) cashed the check containing the forged signature, were sufficient, at a minimum, to establish probable cause for her arrest.

8

from the check-cashing establishment that Stokes had cashed the Check.[6]

The three arguments made by Stokes in an attempt to avoid summary judgment on this claim are unavailing because, as discussed below, they fail to undermine or address the uncontroverted evidence outlined above indicating that Buskey had probable cause to arrest Stokes. First, Stokes argues that Buskey should have done additional investigation before making the arrest. For example, Stokes criticizes Buskey for failing to: (1) interview Archer-Cunningham in person, rather than over the telephone; (2) have Archer-Cunningham sign a criminal court complaint or affidavit; or (3) submit the Check to experts for handwriting analysis. However, it is well-settled that there is no independent claim for a police officer's purported failure to investigate; rather, such allegations are considered, to the extent they are relevant, within the framework of claims for false arrest, false imprisonment, or malicious prosecution. *See Blake v. Race*, No. 01-CV-6954 (JFB), 2007 WL 952063, at \*19 n.18 (E.D.N.Y. Mar. 29, 2007); *Campbell v. Giuliani*, No. 99-CV-2603 (JG), 2000 U.S. Dist. LEXIS 1617, at \*12 (E.D.N.Y. Feb. 16, 2000). Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Curley*, 268 F.3d at 70 ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."); *Cornett v. Brown*, 04-CV-0754 (DGT) (LB), 2006 U.S. Dist. LEXIS 22415, at \*23 (E.D.N.Y. Mar. 30, 2006) ("[W]hile an arresting officer may not disregard information known to him in making an arrest, he is not required 'to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'") (quoting *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003)); *Williams v. City of New York*, 02-CV-3693 (CBM), 2003 U.S. Dist. LEXIS 19078, at \*12 (S.D.N.Y. Oct. 23, 2003) (noting that, once probable cause to arrest exists, police officers have no obligation to conduct additional investigation "to address every possible discrepancy or alternative prior to" the arrest even if "further investigation" would have "yielded results in plaintiffs' favor"); *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) ("Police officers need not conduct an investigation which exculpates an arrestee.") (citing *Baker*

---

[6] Although Stokes also argues that there was no probable cause to support her arrest for the charge of Criminal Impersonation in the Second Degree, the Court need not address that issue on a false arrest claim because probable cause existed as to the forgery charge, and, thus, the arrest is justified even if there were other charges for which no probable cause existed. Thus, whether or not there was also probable cause for the criminal impersonation charge is irrelevant for purposes of the false arrest claim. As the Second Circuit has observed, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause)).

*v. McCollan*, 443 U.S. 137, 147 (1979)). As the Second Circuit has explained,

> [P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation.

*Krause*, 887 F.2d at 370. Thus, in the instant case, once Buskey learned from Archer-Cunningham that someone had allegedly forged her signature on the Check, that former employee Stokes had cashed the Check, and that Stokes had access to the Check, he had probable cause to arrest Stokes and did not have an independent duty to conduct additional investigation where there was no reason to doubt the victim's veracity.[7]

Second, the Court finds unpersuasive Stokes' effort to create an issue of fact by pointing to purported discrepancies between Archer-Cunningham's deposition testimony and Detective Buskey's testimony regarding what information she provided to Buskey in reporting the forgery. The Court recognizes that, in analyzing this motion for summary judgment, the Court must view the evidence in the light most favorable to Stokes, the non-moving party. Therefore, the above-referenced uncontroverted evidence is based upon the most favorable version of the evidence for the plaintiff contained in the testimony of Archer-Cunningham, rather than any additional details in Buskey's testimony which Stokes argues should not be credited.[8] In other words, the Court has relied solely on Archer-Cunningham's undisputed testimony to determine what information she provided to the police. Specifically, Archer-Cunningham testified that she told the police the following: (1) she called the 70th Precinct in mid-February 2004 to tell them that the Check had been signed without her authorized signature and that Stokes had cashed it (Ex. 2, at 87-88); (2) Archer-Cunningham is the only person authorized to sign checks issued by Ifetayo (Ex. 2, at 51); (3) that the Check at issue was made out to Heather Stokes as payee (Ex. 2, at 50); and (4) that she wanted the matter "documented and investigated" (Ex. 2, at 49-50). In addition, Archer-Cunningham testified that she provided Buskey with a copy of the Check (Ex. 2, at 52.) This deposition testimony is also completely consistent with her recent affidavit (submitted with defendants' summary judgment motion) which provides:

> On February 13, 2004, I called the 70th Precinct of the New York City

---

[7] In any event, as noted above, Buskey did conduct additional investigation by obtaining a copy of the Check from the victim and confirming with the check-cashing establishment that Stokes had, in fact, cashed the check. Although such investigation was not required, it provided corroboration of the victim's account.

[8] The Court notes that the purported discrepancies raised by Stokes between the accounts of Buskey and Archer-Cunningham are not material to the Court's analysis of the probable cause issue. For example, Stokes argues that Buskey incorrectly stated in his deposition that Archer-Cunningham told him that Stokes signed Archer-Cunningham's name to the check at issue. However, even if she did not specifically identify who had forged her name to Buskey, Archer-Cunningham has stated in sworn testimony that she told the police that her signature was forged on the Check and Stokes, her former employee, had cashed the Check without authorization. Stokes has pointed to no evidence to contradict that testimony and, based upon that information and the strong inference that could be drawn therefrom, there was probable cause to believe that Stokes had forged the check.

Police Department to report that a check in the amount of approximately Four Hundred and Thirty-One Dollars ($431.00) (herein referred to as "the check") from Ifetayo had been cashed by Heather Stokes without an authorized signature. I was the only person to sign checks on behalf of Ifetayo on the account on which the check was drawn. I did not sign the check from Ifetayo that was cashed by Heather Stokes. On February 20, 2004, I spoke with Detective Mark Buskey from the New York City Police Department about the check that was cashed by a former employee of Ifetayo, Heather Stokes. I told Detective Mark Buskey that Heather Stokes cashed the check issued by Ifetayo and that I did not sign the front of the check as payor. After Heather Stokes' arrest, I told the District Attorney's Office that I did not want to pursue the prosecution of Heather Stokes.

(Ex. D., at ¶¶ 4-9.) In short, as discussed above, based upon Archer-Cunningham's uncontroverted testimony regarding information provided to the police (completely apart from any disputed details of Buskey's conversation with Archer-Cunningham, as recounted by Buskey), there was probable cause to arrest Stokes.

Third, the Court finds Stokes' arguments regarding Buskey's alleged lack of credibility and purported improper motives for the arrest to be similarly unavailing because such issues have no bearing on the probable cause analysis in this case. An officer's personal, subjective opinion as to whether there is probable cause to arrest is irrelevant; rather, probable cause is analyzed objectively. *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y. 1998) ("Even less savory ulterior motives are irrelevant as long as the facts available to the arresting officer satisfy the probable cause standard."). Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti*, 124 F.3d at 128; *see also Curley*, 268 F.3d at 70 ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."); *Cornett*, 2006 U.S. Dist. LEXIS 22415, at *23 ("[W]hile an arresting officer may not disregard information known to him in making an arrest, he is not required 'to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'") (quoting *Jocks*, 316 F.3d at 135-36). Moreover, as noted above, even if the Court uses only the victim's testimony (rather than Buskey's) regarding the information supplied to the police, there was probable cause for the arrest.

Finally, even though Archer-Cunningham told the District Attorney's Office following the arrest that she did not want to pursue the prosecution of Stokes and the Office declined to prosecute, that subsequent decision is not a basis for undermining the probable cause determination at the time of arrest. *See Krause*, 887 F.2d at 370 ("Even if [the plaintiff] had actually gone to trial and been acquitted, that result would have no bearing on the determination of whether probable cause existed to arrest him.").

In sum, the objective, uncontroverted facts establish probable cause for plaintiff's arrest. Accordingly, Stokes' false arrest/false imprisonment claim cannot survive summary judgment.

### 2. Qualified Immunity

In the alternative, even assuming *arguendo* that probable cause to arrest Stokes on the forgery charge was lacking, the Court finds that Buskey is entitled to summary judgment based upon the doctrine of qualified immunity.

The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation omitted)). Thus, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When analyzing qualified immunity in the context of a suit for damages based on an arrest allegedly without probable cause, a police officer is immune from such suit "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)). The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted). Moreover, under that standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McCllellan*, 439 F.3d at 147-48 (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).

In the instant case, given the information provided to the police by Archer-Cunningham – including that she did not authorize her signature on the Check and that the Check was cashed by Stokes, a former employee of Ifetayo who had access to the Check – the

Court concludes that, at a minimum, reasonable officers could disagree on whether probable cause existed to arrest Stokes on the forgery charge. Therefore, because, at a minimum, arguable probable cause existed for the arrest, Buskey is entitled to summary judgment based upon the doctrine of qualified immunity, even if probable cause was lacking.

### D. Excessive Force

Stokes has alleged excessive force was used by Buskey during the arrest. Specifically, Stokes argues that the force used – namely, being frisked and handcuffed – was excessive because Buskey entered the residence without a warrant and without consent. As set forth below, the routine frisking and handcuffing of a defendant during an arrest cannot be the basis of a Fourth Amendment excessive force claim and, thus, such a claim cannot survive summary judgment under the facts of this case.

A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotations omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted). "Officers may not . . . gratuitously inflict pain in a manner that is not a reasonable response to the circumstances." *Diaz v. City of New York*, No. 00-CV-2944 (JMA), 2006 U.S. Dist. LEXIS 93923, at *18 (E.D.N.Y. Dec. 29, 2006) (citing *Amnesty Am.*, 361 F.3d at 124). However, "the reasonableness inquiry does not allow [the court] to substitute [its] own viewpoint; [the court] must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham*, 490 U.S. at 396).

Here, Stokes' claim of excessive force is, in essence, based on the argument that the entry into the apartment to execute the arrest was illegal and, therefore, any force during the arrest is *per se* excessive. However, in *Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006), the Second Circuit clarified a prior decision in *Atkins v. New York City,* 143 F.3d 100 (2d Cir. 1998), and reiterated that the existence of an unlawful seizure does not necessarily mean that any use of force during such seizure is *per se* excessive and unlawful. More specifically, in *Jones*, the Court rejected the argument that force used during an arrest without probable cause is *per se* excessive and, instead, emphasized that the same reasonableness standard articulated in *Graham* applies to those situations as well:

13

There was . . . no need for this Court in *Atkins* to reach the question of whether any force used in an arrest lacking probable cause is *per se* excessive. Such a construction would read the highly fact-specific situation in which *Atkins* arose too broadly because it would appear to suggest that any force employed by a police officer would be unlawful so long as probable cause did not exist, even if the detainee had threatened the officer with significant harm. We are further mindful that the Supreme Court held in *Graham* that "*all* claims that law enforcement officers have used excessive force . . . should be analyzed under the . . . 'reasonableness' standard" of the Fourth Amendment, thereby establishing a general requirement. 490 U.S. at 395 (emphasis in original). The *Atkins* court clearly did not intend to create or substitute a new standard for arrests lacking probable cause, and the reasonableness test established in *Graham* remains the applicable test for determining when excessive force has been used, including those cases where officers allegedly lack probable cause to arrest.

*Id*. at 62. Although the issue in this case is not a lack of probable cause to arrest (as discussed *supra*) but rather a dispute about whether the initial entry into the residence to effectuate the arrest was lawful, the *Jones* holding applies with equal force. In other words, this Court rejects Stokes' position that, if the entry into the residence was illegal, then any force subsequent to that entry was illegal and excessive. Instead, as with every case, Stokes must prove that the force used during the arrest was excessive under the *Graham* standard.

After analyzing Stokes' excessive force claim under the *Graham* standard, the Court concludes that it cannot survive summary judgment. As set forth below, the only force to which Stokes points is a routine frisk and handcuffing at the time of arrest. Such force at the time of arrest, absent something more, cannot constitute a cognizable excessive force claim.

"Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing *Cavazos v. Voorhies*, 00-CV-7929 (RAG), 2002 WL 31017492, at *3 (N.D. Ill. Sept. 9, 2002)). "While it is not *per se* reasonable under the *Graham* standard to apply handcuffs during an arrest . . . 'there is still no clear authority on whether and under what circumstances, if any, a person has a constitutional right not to be handcuffed in the course of an arrest.'" *Scott v. County of Nassau*, No. 94-CV-4291 (NGG), 1998 U.S. Dist. LEXIS 19680, at *14 (E.D.N.Y. Dec. 11, 1998) (quoting *Soares v. State of Connecticut*, 8 F.3d 917, 921-22 (2d Cir. 1993)). To determine whether handcuffing of an arrestee is reasonable, the handcuffing must be viewed "in light of the minimal amount of force necessary to maintain custody of [the arrestee]." *Esmont*, 371 F. Supp. 2d at 215. "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Id.* (citing *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002)) (additional citation omitted).

In this instance, Stokes makes no claim that the handcuffs were too tight, that she made any complaints of discomfort to

defendants, or that she suffered any physical injury as a result of the handcuffing. Under such circumstances, this Court concludes, as a matter of law, that the handcuffing of Stokes cannot constitute excessive force. In *Esmont*, the court noted that there were no cases "permitting a plaintiff to establish an excessive force claim based on tight handcuffing in the absence of a request to loosen them." *Esmont*, 371 F. Supp. 2d at 215 (collecting cases); *Scott*, 1998 U.S. Dist. LEXIS 19680, at *14 ("Without additional allegations of excessive force or blatant disregard for pre-existing injuries, complaints, or requests for medical treatment, the use of handcuffs has been found to be reasonable.") (collecting cases); *Gilles v. Davis*, 427 F.3d 197, 207-08 (3d Cir. 2005) (holding that where plaintiff did not complain about pain caused by handcuffs or demonstrate any signs of discomfort and did not seek medical attention, "the facts alleged constitute insufficient evidence as a matter of law for excessive force by handcuffing").

Similarly, with respect to the pat-down search made incident to Stokes' arrest, Stokes sets forth no evidence suggesting that the search was conducted in a non-routine manner. At her deposition, Stokes testified that Buskey patted her down on her clothing. (Stokes Dep. at 152-53.) It is axiomatic that a lawful arrest "establishes the authority to search" and such a search is "reasonable" under the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 235 (1973). Moreover, the police are not required to have probable cause to believe that an arrestee in fact had weapons, contraband or evidence on their persons. *See United States v. Chadwick*, 433 U.S. 1, 14 (1977), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565, 575-79 (1991). Given the record in this case, the pat-down incident to arrest conducted by Buskey was reasonable as a matter of law under the Fourth Amendment and cannot be the basis for an excessive force claim.[9]

---

[9] Although Stokes notes in her Counter 56.1 Statement that the search was done by an officer of the opposite sex, she does not argue that the search was *per se* improper because she is female and Buskey is male, nor does she attempt to make any specific argument regarding the manner of the pat-down search to support an excessive force claim. In any event, courts have repeatedly found that the fact that a pat-down search incident to arrest is conducted by an officer of the opposite sex of the arrestee does not, absent some additional evidence of improper conduct during the search, convert a lawful search incident to arrest into an unlawful one. *See, e.g., Caldwell v. Rubbo*, No. 92-7177, 1993 U.S. App. LEXIS 20412, at *3 (4th Cir. 1993) ("Caldwell had no constitutional right to have the pat-down search performed by someone of her own gender."); *Walton v. City of Southfield*, 995 F.2d 1331, 1339 (6th Cir. 1993) (summary judgment granted to male officer who conducted search of female suspect), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001); *Ziegler v. Doe*, No. 01-CV-10377 (DML), 2003 WL 21369254, at *3 (E.D. Mich. Jun. 11, 2003) ("[T]he plaintiff alleges a generalized right to a non-invasive pat-down search by an officer of the same sex, a rule that would not only be impractical, but also has no support in the jurisprudence."); *Wyatt v. Slagle*, 240 F. Supp. 2d 931, 939-940 (S.D. Iowa 2002) (holding that opposite-sex pat-down searches conducted incident to arrest were reasonable under the Fourth Amendment and granting summary judgment for defendant officer in Section 1983 action); *Greiner v. City of Champlin*, 816 F. Supp. 528, 543 (D. Minn. 1993) ("Plaintiffs do not specifically argue that the method in which [the police officer] conducted the search gave rise to the constitutional violation, but instead implies [sic] that the fact that a male officer rather than a female officer conducted the search means a *per se* constitutional violation occurred. The Court disagrees."), *aff'd in part, remanded in part on other grounds*, 27 F.3d 1346 (8th Cir. 1994). This holding has also been applied to misdemeanor

In sum, Stokes has alleged no force, or provided any evidence of force, beyond routine handcuffing and a pat-down incident to the arrest which are both proper under the Fourth Amendment and, thus, cannot provide a legal basis for an excessive force claim.[10] Accordingly, summary judgment on the excessive force claim is granted.

---

arrests. *See, e.g., Martin v. Swift*, 781 F. Supp. 1250, 1253 (E.D. Mich. 1992) (holding that there is "no question that [the pat-down search of a female arrestee on a misdemeanor by a male officer] *would* pass constitutional muster" and noting "[t]o find otherwise would require every police car to carry two officers, one male and one female, so that misdemeanants would be searched by officers of the same sex") (emphasis in original). Here, no evidence has been proffered regarding anything improper about Buskey's conduct during the pat-down search.

[10] At oral argument, counsel for plaintiff acknowledged that no physical excessive force was used against plaintiff and, instead, argued that plaintiff was subjected to excessive force in the sense of mental and emotional distress: "I don't think there's physical excessive force, your Honor. I think there's excessive force in the sense of mental and emotional distress." (Oral Argument Tr. at 14.) However, to the extent plaintiff claims that she suffered mental or emotional distress from the alleged unlawful entry of the police officers into her home to arrest her, that issue would be considered under the unreasonable search and seizure claim discussed *supra* and does not provide a separate avenue for recovery under an excessive force claim where no physical excessive force is alleged. *See, e.g., Davis v. United States*, 03-CV-1800 (NRB), 2004 WL 324880, at *28 n.6 (S.D.N.Y. Feb. 19, 2004) ("Emotional pain and suffering cannot form the basis of an excessive force claim.") (collecting cases).

### F. Municipal Liability

Defendants argue that summary judgment should be granted in their favor because plaintiff lacks evidence that the alleged unconstitutional conduct of defendant Buskey was the product of an official policy or custom.

The Supreme Court expressly rejected liability pursuant to a theory of *respondeat superior* for purposes of section 1983 in *Monell*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory."). Thus, "[a] municipality will not be held liable under Section 1983 unless the plaintiff can demonstrate that the allegedly unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom 'officially adopted and promulgated by that [municipality's] officers.'" *Abreu v. City of New York*, No. 04-CV-1721 (JFB), 2006 U.S. Dist. LEXIS 6505, at *11 (E.D.N.Y. Feb. 22, 2006) (quoting *Monell*, 436 U.S. at 690). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986)). An individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y. City Transit Auth*, 941 F.2d 119, 123 (2d Cir. 1991). However, "[a] court may draw the inference of the existence of a policy or custom 'when a plaintiff presents evidence that a municipality so failed to train its

employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Caidor v. M&T Bank Corp.*, No. 05-CV-0297 (FJS/GJD), 2006 U.S. Dist. LEXIS 22980, at *35-36 (N.D.N.Y. Mar. 27, 2006) (quoting *Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 04-CV-1453 (FJS/GJB), 2005 U.S. Dist. LEXIS 12902, *10 (N.D.N.Y. Jun. 20, 2005) (quotation omitted)). However, "'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal citation and quotation omitted).

The Court finds that the municipal liability claim should be dismissed because plaintiff has failed to adduce any evidence, beyond mere speculation and conjecture, that the alleged unconstitutional conduct committed by Buskey was connected to any municipal policy, custom or practice. *See, e.g., Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006) ("The doctrine of *respondeat superior* is insufficient to support a claim against a municipal employer, as are conclusory assertions of a custom or policy in the absence of factual allegations or inferences.") (citing *Zahra,* 48 F.3d at 678); *see also Young v. County of Fulton*, 999 F. Supp. 282, 285-86 (N.D.N.Y. 1998) (granting summary judgment on municipal liability claim under section 1983 because plaintiffs relied solely on conjecture and hyperbole to indicate a custom or practice on the part of the defendants); *Roberts by Roberts v. City of New York*, 753 F. Supp. 480, 485 (S.D.N.Y. 1990) (same).

G. State Law Claims

Defendants also move for summary judgment on Stokes' pendent state law claims for false arrest, assault and battery, and negligent hiring/retention. As set forth below, the Court concludes that these claims cannot survive summary judgment.

With respect to the false arrest claim, it is well-settled that the analysis of a false arrest/false imprisonment claim under New York law is "substantially the same" as that under the Fourth Amendment. *See Weyant*, 101 F.3d at 852. Thus, "the existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . whether that action is brought under state law or under § 1983." *Id.* (citations and quotations omitted). As discussed *supra*, the Section 1983 false arrest/false imprisonment claim must fail because probable cause to arrest existed and, thus, the false arrest/false imprisonment claims under state law fails for the same reason.

Similarly, the Court's analysis of the excessive force claim under Section 1983 likewise precludes recovery under state law for assault and battery. *Kramer v. City of New York*, No. 04-CV-0106 (HB), 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) ("In the context of state officers performing their lawful duties, New York State law regarding assault and battery parallels the federal laws regarding excessive force.").[11] Specifically,

---

[11] The Court recognizes that New York State law may differ in a situation where there has been an unlawful arrest because, unlike the rule described by the Second Circuit in *Jones*, 465 F.3d 46, and discussed *supra* as to Stokes' excessive force claim, some New York courts have suggested that, under New York law, any touching during an

under New York law, reasonable force used during a lawful arrest is privileged. *See, e.g., Arnold v. State*, 486 N.Y.S.2d 94, 95-96 (N.Y. App. Div. 1985). Thus, the routine handcuffing and pat-down of an individual during a lawful arrest, without any evidence to suggest that such acts were performed in an unreasonable manner (such as an unreasonable tightening of the handcuffs causing injury), cannot provide a basis for a jury to find in plaintiff's favor on an assault and battery claim. *See, e.g., Kramer*, 2004 WL 2429811, at *11 (dismissing assault and battery claims based on handcuffing during lawful arrest); *Palmer v. Town of Eastchester*, No. 96-CV-4860 (BSJ), 1997 WL 811536, at *4 (S.D.N.Y. Apr. 9, 1997) (handcuffing and pat-down during lawful arrest was privileged and defeated state law claims for assault and battery). Accordingly, defendants are entitled to summary judgment on Stokes' assault and battery claim.

Finally, with respect to the negligent hiring and/or retention claims, the Court notes as a threshold matter that, because Stokes' opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned and summary judgment could be granted on that basis alone. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03-CV-6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim); *see also DeVito v. Barrant*, No. 03-CV-1927 (DLI), 2005 WL 2033722, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00-CV-9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default."). In any event, as set forth below, the Court has examined the merits of this claim and concluded that it must be dismissed as a matter of law.

It is well settled under New York law that "[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment." *Colodney v. Continuum Health Partners, Inc.*, No. 03-CV-7276 (DLC), 2004 U.S. Dist. LEXIS 6606 (S.D.N.Y. Apr. 15, 2004). Thus, "[w]here an employee is acting within the scope of his or her employment, the employer is liable under the theory of *respondeat superior* and no claim may

---

unlawful arrest is a battery. *See, e.g., Johnson v. Suffolk Cty. Police Dep't*, 665 N.Y.S.2d 440 (N.Y. App. Div. 1997) ("As the arrest of the plaintiff by the defendant police officer . . . was unlawful, [the officer] committed a battery when he touched the plaintiff during that arrest."); *Budgar v. State of New York*, 414 N.Y.S.2d 463, 466 (N.Y. Ct. Cl. 1979) ("[S]ince the arrest was unlawful, a technical assault and battery occurred when the claimant was handcuffed and forcibly placed in the State police car."). However, that potential theory of recovery under state law cannot arise here because, as discussed *supra*, the Court has concluded that there was probable cause for plaintiff's arrest and, thus, the arrest was lawful.

18

proceed against the employer for negligent hiring or retention." *Rossetti v. Bd. of Educ.*, 716 N.Y.S.2d 460, 462 (N.Y. App. Div. 2000); *see also Murns v. City of New York*, No. 00-CV-9590 (DLC), 2001 WL 515201, at *5 (S.D.N.Y. May 15, 2001). In the instant case, it is undisputed that Buskey was acting within the scope of his employment. Accordingly, summary judgment on this claim is warranted.

IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is (1) denied as to the unreasonable search and seizure claim; (2) granted as to the false arrest and false imprisonment claims; (3) granted as to the excessive force claim; (4) granted as to the municipal liability claim; and (5) granted as to the pendent state claims.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 3, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiff is Michael Colihan, Esq., 44 Court Street, Suite 911, Brooklyn, New York 11201. The attorney for defendants is Brooke Birnbaum, Esq., Of Counsel, Corporation Counsel of the City of New York, 100 Church St., New York, New York 10007.